

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>OCTAVIA DANTZLER,<br><br>*Defendant*. | Case No. 3:25-cr- 43<br><br>18 U.S.C. § 1349<br>Conspiracy to Commit Health Care Fraud<br>(Count 1)<br><br>18 U.S.C. § 1028A<br>Aggravated Identity Theft<br>(Count 2)<br><br>Forfeiture Allegation |

### INDICTMENT

March 2025 Term — At Richmond, Virginia

THE GRAND JURY CHARGES THAT:

### GENERAL ALLEGATIONS

#### Virginia Medicaid Mental Health Programs

1. The Virginia Medicaid Program ("Medicaid"), a "health care benefit program" as defined by United States Code 18 U.S.C. § 24, provides medical assistance to individuals in Virginia who meet certain eligibility requirements. The United States Department of Health and Human Services ("HHS") through its agency, the Centers for Medicare and Medicaid Services ("CMS"), and the Commonwealth of Virginia, Department of Medical Assistance Services ("DMAS") administer and supervise the administration of the Medicaid program in Virginia. The United States contributes approximately fifty-one percent of the cost to the Medicaid program.

2. Individuals who receive benefits under Medicaid are commonly referred to as "beneficiaries" or "recipients."

1

3. DMAS authorizes health care providers to render mental health counseling services under programs called Mental Health Skill Building ("MHSB") and Intensive In-Home Services ("IIH"), among other programs. MHSB is for individuals over 21 years old, and IIH is for individuals under 21 years old.

4. MHSB services are provided by a mental health counselor and focus on training related to the recipient's health and safety, including personal hygiene, communication skills, and stress management and coping skills; activities of daily living, including independent use of community resources such as public transportation; and medication management, including adherence to recommended medical care and attending medical appointments.

5. IIH services are provided by a mental health counselor and focus on intensive therapeutic interventions in the youth's residence for improving family functioning addressing interpersonal relations between family members and significant impairments in the youth's major life activities. IIH services are designed for youths who are at risk of being moved into an out-of-home placement or who are being transitioned to home from an out-of-home placement.

6. MHSB and IIH must be provided by either a Licensed Mental Health Professional ("LMHP") or a Qualified Mental Health Professional ("QMHP"). LMHPs possess an advanced license, such as a license to work as a clinical psychologist or clinical social worker. QMHPs possess a bachelor's degree and have a requisite level of training and experience in providing behavioral health services.

7. All billing for MHSB and IIH services must be supported by a comprehensive needs assessment and an individual service plan for the given recipient, as well as individualized progress notes for each billed claim. The mental health professional (either the LMHP or QMHP) who

provided the services is responsible for drafting a progress note for each counseling session that results in a claim billed to Medicaid.

8. Progress notes must document the recipient's individual circumstances, treatment, and progress, as well as the individualized interventions the counselor provided. The progress notes must include the name of the service rendered, the date and time of the service, the signature and credentials of the person who rendered the service, and the setting in which the service was rendered.

### The Defendant and Live 4 Life

9. In or about June 2019, the defendant, OCTAVIA DANTZLER ("DANTZLER"), began working for Live 4 Life, Inc. as a Qualified Mental Health Professional - Trainee ("QMHP-T"). Live 4 Life was in the business of providing mental health counseling services, and many of Live 4 Life's clients were Medicaid recipients. Live 4 Life was located in the Eastern District of Virginia (specifically, in the area of Richmond, Virginia), and the agency marketed its services to clients in central Virginia.

10. DANTZLER worked as a QMHP-T for Live 4 Life until in or about September 2023, and she earned more than $68,000 in income from Live 4 Life during her time with the agency. At all times relevant to the Indictment, DANTZLER lived in Richmond, Virginia, also within the Eastern District of Virginia.

11. During DANTZLER's period of employment with Live 4 Life, DANTZLER also owned and operated a child daycare center in Henrico, Virginia, which was open from 5:30 a.m. to 7:00 p.m. Monday through Friday.

12. During DANTZLER's tenure at Live 4 Life, she was responsible for providing both MHSB and IIH services to Medicaid recipients.

3

## COUNT ONE
(Conspiracy to Commit Health Care Fraud)

13. The preceding allegations are incorporated herein.

14. From in or about January 2021, through in or about April 2023, in the Eastern District of Virginia, the defendant, OCTAVIA DANTZLER, knowingly and intentionally combined, conspired, confederated, and agreed with others known and unknown to commit offenses against the United States, to wit: Health Care Fraud, that is, to devise a scheme or artifice to defraud a health care benefit program and to obtain, by means of false and fraudulent pretenses, representations, and promises, any of the money owned by, and under the custody and control of, a health care benefit program as defined by Title 18, United States Code, Section 24(b), in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

15. The object of the conspiracy was for DANTZLER and her co-conspirators to obtain health care benefit payments from the Virginia Medicaid Program to which the defendant and her coconspirators were not entitled by submitting and causing to be submitted false and fraudulent billing claims to DMAS.

**Ways, Manner, and Means of the Conspiracy**

16. DANTZLER submitted progress notes for MHSB and IIH services that, in truth and in fact, she did not render. DANTZLER knew the progress notes she submitted were false and fraudulent, and she submitted them for the purpose of substantiating fraudulent billing claims that DANTZLER knew her coconspirators would submit to Medicaid for payment.

17. In total, DANTZLER submitted approximately 1,011 fraudulent progress notes purporting to reflect over 2,516 hours of MHSB and IIH services provided to six different Medicaid recipients. The 1,011 fraudulent progress notes reflected claims to Medicaid worth

4

approximately $171,951.14. DANTZLER drafted and submitted these progress notes while knowing full well that the services described in the progress notes were never rendered and that Live 4 Life would use the progress notes to bill Medicaid.

18. DANTZLER submitted approximately 228 progress notes purporting to reflect that she provided IIH services to Individual 6, a Medicaid recipient and a minor, between September 2021 and April 2023. DANTZLER claimed she provided a total of approximately 576 hours of IIH services to Individual 6. In truth and in fact, Individual 6 never met DANTZLER and has no knowledge of DANTZLER. The mother of Individual 6 was aware of Live 4 Life and requested IIH services for both of her daughters. When no services were rendered, the mother of Individual 6 contacted another employee from Live 4 Life inquiring about the lack of contact and services. Despite this inquiry, DANTZLER never contacted Individual 6 and did not provide IIH or mental health counseling services.

19. DANTZLER submitted approximately 219 progress notes purporting to reflect that she provided IIH services to Individual 7, a Medicaid recipient, between September 2021 and December 2022. Individual 7 was a minor, and the sister of Individual 6. DANTZLER claimed she provided a total of approximately 544 hours of IIH services to Individual 7. In truth and in fact, Individual 7 never met DANTZLER and never received services from Live 4 Life. Many of the progress notes that DANTZLER drafted for Individual 6 and Individual 7 reflected services that were provided at the same time, which is prohibited by DMAS because IIH services must be provided on an individualized basis. Moreover, many of the progress notes DANTZLER submitted for the two siblings bore identical and duplicative descriptions of the purported observations and interventions.

20. DANTZLER submitted approximately 63 progress notes purporting to reflect that she provided IIH services to Individual 8, a Medicaid recipient, between January 2021, and May 2021. Individual 8 was a minor who lived with her family in the Disputanta, Virginia-area, which is within the Eastern District of Virginia. DANTZLER claimed she provided a total of approximately 153 hours of IIH services to Individual 8 during the times specified in the progress notes. In truth and in fact, when Individual 8 and her family moved to Disputanta, Virginia in November 2020, Individual 8 received counseling services exclusively from her elementary school, South Elementary School, and not from Live 4 Life. In short, DANTZLER did not render the IIH services to Individual 8 as DANTZLER falsely claimed in her progress notes.

21. DANTZLER submitted approximately 166 progress notes purporting to reflect that she provided IIH services to Individual 9, a Medicaid recipient and a minor, between April 2021, and December 2022. DANTZLER claimed she provided a total of approximately 428 hours of IIH services to Individual 9. In truth and in fact, Individual 9 never received any services from DANTZLER. The progress notes drafted by DANTZLER for Individual 9 contained multiple indicia of fraud. For example, DANTZLER submitted duplicative and identical progress notes for Individual 9 across multiple dates; she submitted duplicative and identical progress notes for Individual 9's sibling; and she submitted progress notes for Individual 9 reflecting the same time period as progress notes she drafted for Individual 9's sibling and other Medicaid recipients.

22. DANTZLER submitted approximately 282 progress notes purporting to reflect that she provided IIH and MHSB services to Individual 10, between April 2021, and March 2023. Individual 10 was a sibling to Individual 9. DANTZLER claimed she provided a total of approximately 311 hours of IIH services and 363 hours of MHSB to Individual 10. In truth and in fact, Individual 10 never received any services from DANTZLER. The progress notes

DANTZLER drafted for Individual 10 bore multiple indicia of fraud. For example, DANTZLER submitted duplicative and identical progress notes for Individual 10 across multiple dates; she submitted duplicative and identical progress notes for Individual 10's sibling; and she submitted progress notes for Individual 10 reflecting the same time period as progress notes she drafted for Individual 10's sibling and other Medicaid recipients.

23. DANTZLER submitted approximately 44 progress notes purporting to reflect that she provided MHSB services to Individual 11, a Medicaid recipient, between February 2021 and June 2021. DANTZLER claimed she provided a total of approximately 141 hours of MHSB services to Individual 11. In truth and in fact, Individual 11 contacted Medicaid to notify them she had obtained counseling services through Live 4 Life, but that she had stopped receiving services in January 2021. In short, DANTZLER did not render the MHSB services to Individual 11 as DANTZLER claimed in her progress notes.

24. Live 4 Life routinely and fraudulently marked up its billings to Medicaid beyond the amount of hours claimed in DANTZLER's already fraudulent progress notes. For example, DANTZLER submitted three fraudulent progress notes to Live 4 Life reflecting five hours of services purportedly provided to Individual 7 across three separate weeks in October and November 2022. For each of those three weeks, Live 4 Life submitted billings to Medicaid that claimed DANTZLER had provided seven hours of services each week, further compounding the losses suffered by Medicaid. For Individuals 6, 7, 8, 9, 10, and 11, Live 4 Life fraudulently billed Medicaid a total of approximately $247,936.98 for services that were never rendered. DANTZLER personally drafted and submitted fraudulent progress notes constituting a loss of $171,951.14 to Medicaid.

(In violation of Title 18, United States Code, Section 1349.)

## COUNT TWO
(Aggravated Identity Theft)

25. The allegations of Paragraphs 1 through 24 are incorporated herein.

26. On or about the dates set forth below, in the Eastern District of Virginia and within the jurisdiction of this Court, as well as elsewhere, the defendant, OCTAVIA DANTZLER, did knowingly and unlawfully possess and use, without lawful authority, means of identification of other persons (as set forth in more detail below), knowing that the means of identification belonged to another actual person, during and in relation to a felony violation contained in Chapter 63 of Title 18, United States Code (that is, Conspiracy to Commit Health Care Fraud, in violation of 18 U.S.C. Section 1349).

27. On March 5, 2022, DANTZLER sent an email to a Live 4 Life company email address, notes.l4linc@gmail.com, containing the IIH progress notes she wrote for Individual 6 for the time period February 6, 2022 through February 12, 2022. Specifically, DANTZLER drafted and submitted progress notes for February 10, 2022, while knowing full well that the services described in the progress notes were never rendered and that Live 4 Life would use the progress notes to bill Medicaid. The progress notes contained Individual 6's name and were used to substantiate billing claims by Live 4 Life, which billing claims included Individual 6's name, date of birth, Social Security number, and Medicaid ID number.

28. Individual 6 never met DANTZLER and has no knowledge of DANTZLER. The mother of Individual 6 was aware of Live 4 Life and requested IIH services for both of her daughters. When no services were rendered, the mother of Individual 6 contacted another employee from Live 4 Life inquiring about the lack of contact and services. Despite this inquiry, DANTZLER never contacted Individual 6 and did not provide IIH or mental health counseling services. Live 4 Life submitted billing claims to Medicaid based on these progress notes in the

8

amount of $405, unbeknownst to Individual 6, or her mother, in violation of Title 18, United States Code, Sections 1028A and 2.

## FORFEITURE ALLEGATION

Pursuant to Rule 32.2(a) Fed. R. Crim. P., the defendant is hereby notified that upon the conviction of the offense listed in Count One of this Indictment, the defendant shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

Property subject to forfeiture includes, but is not limited to:

> The sum of at least $171,951.14, which represents the amount of proceeds the offenses charged in Count One, which sum shall be reduced to a money judgment against the defendant in favor of the United States.

If property subject to forfeiture cannot be located, the United States will seek an order forfeiting substitute assets.

(In accordance with Title 18, United States Code, Section 982(a)(7) and Title 21, United States Code, Section 853(p)).

A TRUE BILL:

_____  3/19/2025
FOREPERSON

ERIK S. SIEBERT
UNITED STATES ATTORNEY

_____
Shea Gibbons
Assistant United States Attorney

*Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office*

9